UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARRION DOTSON, | ) |
| Movant, | ) |
| vs. | ) Case No. 4:13CV01176 SNLJ |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This case is a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Marrion Dotson, a person in federal custody. On March 9, 2011, Dotson plead guilty before this Court to the offenses of Kidnapping and Use and Possession of a Firearm in Furtherance of a Crime of Violence in case number 4:11CR11. On September 21, 2011, this Court sentenced Dotson to the Bureau of Prisons for a term of 252 months, a sentence within the sentencing guideline range. Following the notice of appeal, on May 22, 2012, the Eighth Circuit, in an unpublished opinion, affirmed his conviction, USCA no. 11-3325. Dotson's § 2255 action, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

**STANDARDS GOVERNING MOTIONS UNDER 28 U.S.C. § 2255**

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack,..." 28 U.S.C. § 2255. Claims based on a federal statute or rule, rather than on a specific constitutional guarantee, can

be raised "on collateral review only if the alleged error constituted a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Reed v. Farley*, 512 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994).

The Court must hold an evidentiary hearing to consider claims in a § 2255 motion "'[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Shaw v. United States*, 24 F.3d 1040, 1043 (8thCir. 1994) (citing 28 U.S.C. § 2255). Thus, a movant is entitled to an evidentiary hearing "'when the facts alleged, if true, would entitle him to relief.'" *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). The Court may dismiss a claim "'without an evidentiary hearing if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Shaw*, 24 F.3d at 1043 (citation omitted).

## **DISCUSSION**

Movant maintains he received ineffective assistance of counsel, and in order to prevail, he must show that his attorney's performance was "deficient" and that the deficient performance was "prejudicial." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. To overcome this presumption, movant must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."

Even if movant satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. *Id*. at 691. Movant must prove that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In the context of a guilty plea, to demonstrate prejudice the movant must show that, but for counsel's error, he would not have pled guilty, but would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

## **MOTION TO VACATE**

Presenting in three grounds, movant seeks to vacate, set aside or correct his conviction and sentence on the grounds of his counsel being ineffective in that, 1) movant was told by counsel that he would be entering a plea of guilty to one of the two counts and only receive a seven year sentence, 2) the failure to object to a specific guideline enhancement and 3) the failure, on appeal, to raise the "reasonable certainty" claim.

### I.

Movant claims his counsel was ineffective for telling him that he would be entering a plea to only one of the two counts and was to receive a specific seven year sentence.

The Eighth Circuit has held that, "'[s]olemn declarations in open court carry a strong presumption of verity.'" *Smith v. Lockhart*, 921 F.2d 154, 157 (8th Cir. 1990), quoting *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). Movant's own testimony at the plea and sentencing demonstrates he committed the offenses charged, voluntarily pled guilty to both, and received effective assistance of counsel. *Smith,* 921 F.2d at 157.

The record as follows completely debunks the first allegation made by movant.

2THE COURT: This next case is the United States of

3 America versus Marrion Dotson, case number 11:CR 11.The
4 government is present by Assistant United States Attorney
5 Thomas Mehan. The defendant is present by counsel, Kristy
6 Ridings, and are you Marrion Dotson?

7 MR. DOTSON: Yes, sir.

8 THE COURT: Is there an announcement?

9 MS. RIDINGS: Yes, Your Honor.
10 Pursuant to the guilty plea agreement that's in front
11 of this Court, my client is -- as of this time authorized me
12 in entering pleas of guilty on Counts 1 and 2 on his behalf.

13 THE COURT: Mr. Dotson, I'll ask you a number of
14 questions this morning about your willingness and desire to
15 enter this plea of guilty. If at any time you don't
16 understand my questions, just interrupt me and let me know
17 that and I'll explain the questions further.
18 Will you do that then?

19 MR. DOTSON: Yes, sir.

**(Page 4)**

5 THE COURT: Are you satisfied the way she's handled
6 your case?

7 MR. DOTSON: Yes, sir.

8 THE COURT: Has she investigated the case to your
9 satisfaction?

10 MR. DOTSON: Yes, sir.

11 THE COURT: Has she done everything you asked her to
12 do?

13 MR. DOTSON: Yes, sir.

14 THE COURT: No gripes or complaints whatsoever?

15 MR. DOTSON: None.

**(Page 5 – 6)**

22 THE COURT: The lawyers have given me a written
23 guilty plea of agreement which consists of 16 pages and I see
24 that you and both lawyers have signed it on page 11.
25 Is that right?

1 MR. DOTSON: Yes, sir.

2 THE COURT: Have you read this agreement?

3 MR. DOTSON: Yes, sir. We went over it.

4 THE COURT: Have you gone over it in detail with
5 your lawyer?

6 MR. DOTSON: Yes, Your Honor.

7 THE COURT: Has she explained the contents of the
8 agreement in detail to you?

9 MR. DOTSON: Yes, sir.

10 THE COURT: And do you understand the contents of
11 the agreement?

12 MR. DOTSON: Yes, sir.

13 THE COURT: Is there anything in here that you do
14 not understand?

15 MR. DOTSON: No, sir.

16 THE COURT: Have any promises been made by anyone
17 to get you to plead guilty other than the promises that are
18 set out in this agreement?

19 MR. DOTSON: Yes, sir.
20 I mean no, sir. No, sir.


**(page 8 – 9)**

5 THE COURT: Now what I am bound by is the statutory
6 punishment for the offense which is on the bottom of page
7 four. For Count 1 the statute provides for imprisonment for
8 a term of years or for life, a fine of not more than $250,000
9 or combination of imprisonment and fine and, also, after
10 imprisonment, there would be a period of supervised release
11 of at least five years and on Count 2 the range of punishment
12 is incarceration or imprisonment for not less than seven
13 years all the way up to life in prison. Moreover, or a fine
14 of up to $50,000 or, again, a combination of imprisonment and
15 fine.
16 On Count 2, the period of supervised release is up
17 to -- not more than five years.

18 MR. MEHAN: Judge, if I may, it's discussed
19 elsewhere but probably should have been included there that
20 for Count 2 the imprisonment is not less than seven years
21 consecutive to that for Count 1.

22 THE COURT: Yes, that's why I was –

23 MR. MEHAN: Thank you.

24 THE COURT: -- concerned about that.
25 So let me review those statutory penalties.
1 Count 1 is up to life in prison. Count 2 is seven
2 years to life and the sentence on the Count 2 must be run
3 consecutively to the sentence on Count 1.
4 You understand?

5 MR. DOTSON: Yes, sir.

6 THE COURT: And knowing that, you still wish to
7 plead guilty?

8 MR. DOTSON: Yeah.

9 THE COURT: And now do you understand the sentence
10 is completely up to me and my discretion?

11 MR. DOTSON: Yes, sir.

12 THE COURT: And I have no idea what kind of

13 sentence I'm going to impose and I won't know until after I
14 see the presentence report but knowing that it's going to be
15 in my discretion, I want to make sure that nobody has told
16 you or promised you that you are going to get some sentence
17 in this case. Has that happened or –

18 MR. DOTSON: No, sir.

**(page 16)**

11 THE COURT: All right. Based on your sworn
12 testimony, the Court finds that you are competent to enter
13 the plea of guilty; that you are doing so freely, knowingly
14 and voluntarily.
15 Further, that you have admitted the essential elements
16 of the crimes charged. Therefore, I find you guilty as
17 charged.
18 I accept the plea agreement and I'll order a
19 presentence investigation.

## SENTENCING HEARING

**(Page 7)**

18 THE COURT: All right. Mr. Dotson, do you want to
19 make any statement?

20 DEFENDANT DOTSON: Yes, sir. I did not stay with the
21 girls. All I did was drove the car, and I didn't even know
22 that they was even going to kidnap nobody. They misled me
23 into -- I'm helping. I'm known for helping people, and they
24 know this. They came to me telling me like they was going to
25 meet --what is her name -- LaTonya. They was going to meet
1 Latonya to receive some money. They never told me that they
2 was going to kidnap nobody. And when we got there, that's
3 when it happened. And I did not stay there with the women or
4 nothing. When they kidnapped them, I went and got a hotel
5 room. I left and went home Myron Kimble stayed with them.
6 I dropped Larry off, and Myron Kimble stayed with the girls.

7 THE COURT: But you admitted at the time you pled
8 guilty that you participated in this kidnapping.
**(page 10)**

> THE COURT: All right. Mr. Dotson, at the time you
> 4 pled guilty, I went through the elements of the offense with
> 5 you. And those elements were that the transportation of -- in
> 6 interstate commerce of an unconsenting person who's held for
> 7 ransom or reward or otherwise and such acts being done
> 8 knowingly and willfully, and you admitted to all of those
> 9 elements.
> 10 You also admitted, as to Count II, that in connection
> 11 with the admission of the crime charged in Count I, during and
> 12 in relation to that violent crime, he or someone else who you
> 13 were involved with, used or carried or -- used or carried or,
> 14 in furtherance of that crime, did possess a firearm. So you
> 15 admitted all of the elements of both of those crimes at the
> 16 time that you pled guilty.
> 17 I understand, though, from reading the Presentence
> 18 Investigation, though, that your main involvement was as the
> 19 driver of the vehicle.

These portions of the transcript of movant's plea and sentencing clearly show that he knew he was pleading to both counts and was not to receive merely a seven year sentence.

## II.

The next allegation is that movant's counsel failed to object to the guideline enhancement pursuant to §2A4.1(b)(1). However, the plea agreement stated that the parties did not agree to this enhancement, and in fact, counsel at movant's sentencing hearing objected to its applicability. The facts surrounding movant's knowledge and participation in asking for a ransom is set forth as follows:

**Guilty Plea (page 11)**

[Mr. Mehan:]

> 6 In November 2010, Larry Newman reached out to Myron
> 7 Kimble and Dotson and asked them to assist in his pursuit of
> 8 more of a share of the stolen ATM money. Thinking that
> 9 Latunya Wright and James Wright could give Newman the money

10 he thought he deserved, a plan was developed to kidnap two
11 young females as leverage against the Wrights.
12 On November 21, 2010, Newman, Kimble and Dotson went to
13 a residence in St. Louis County and, using a firearm, forced
14 the two young females into their white Impala and drove off.
15 The kidnappers used a cell phone belonging to one of the
16 females and initially made contact with Edna Wright, the
17 mother of the Wrights, and relayed their demand that if they
18 did not receive more money, the females would be killed.
19 Contact was next made with James Wright and the same
20 demand was made.

**(Page 12)**

2 Many phone calls were made to James Wright to discuss
3 the exchange of the demanded $50,000, later lowered to
4 $15,000, for the two females. One female was eventually
5 released.
6 Several hours later, after more negotiation, an
7 agreement was reached to exchange the money for the second
8 female at a parking lot in north St. Louis County. Myron
9 Kimble was to deliver the female in exchange for the money.

16 THE COURT: All right. Have you heard the
17 statements from the prosecutor?

18 MR. DOTSON: Yes, sir.

19 THE COURT: Everything he say true and accurate?

20 MS. RIDINGS: May we have one moment?

21 (An off the record discussion was held between client
22 and counsel.)

23 MR. DOTSON: Yes, sir.

24 THE COURT: No question about it?

25 (An off the record discussion was held between client and counsel.)

2 MR. DOTSON: Okay.

**(page 14)**

THE COURT: Specifically then do you admit that you
18 knowingly and willfully held for ransom, a reward, the two --
19 the two girls and you transported them from Missouri to
20 Illinois and back during the course of this offense and that
21 the girls did not consent?
22 Do you admit all that?
23 (An off the record discussion was held between client
24 and counsel.)

25 MR. DOTSON: Yes, sir.

1 THE COURT: No question about that?

2 MR. DOTSON: No, sir.

SENTENCING: **(page 4)**

MR. SHOSTAK: I would disagree with the Court with --
4 with regard to that six-level increase because the -- I'm not suggesting to the Court that a
14 ransom wasn't asked for. I'm suggesting he didn't ask for it,
15 and they're trying to apply it to him. And I -- I -- I just
16 don't think that it ought to be applied to him.

MR.MEHAN: Sure, Judge. I -- I guess we finally
19 settled out on this disagreement. I -- Initially, I thought
20 he withdrew his objections to the disagreement. But from the
21 facts of the Plea Agreement the Defendant entered into, he
22 admitted that he with two other individuals were involved in
23 the kidnapping of these two young women. And they, the
24 kidnappers, asked for $50,000. It was labeled over $15,000.
25 One female was released and the second one was then released a
1 couple hours later.
2 And then in the Presentence Report, it reiterates
3 those exact facts; that these three, the kidnappers, asked for
4 the money. The ransom was demanded. And there was no
5 objection to those facts. So the only facts before this Court
6 are that this Defendant, acting with others, used a firearm,
7 kidnapped two women, two young women, and a ransom was
8 demanded. It's plain and simple. It's contained in the facts
9 that he's agreed to.

> 10 THE COURT: Yeah. That's -- That's my recollection,
> 11 too, from the facts as recited in the Plea Agreement and then
> 12 recited again in open court and to which the Defendant agreed
> 13 and admitted. The six-level increase is warranted. So I'll
> 14 overrule the objection to that extent.

Under these circumstances, there was no ineffective assistance of counsel. Moreover, this issue was also addressed in movant's direct appeal, and the Eighth Circuit specifically held that "none of the sentencing issues raised in the briefs have merit." See No. 11-3325 page 2.

### III.

The third and final issue presented by Movant is a challenge to his counsel's effectiveness based upon the alleged "reasonable certainty" claim on appeal, but movant seems to be fashioning a second argument to the applicability of the above enhancement to his total offense level. That argument has been fully addressed and rejected in the discussion on the second issue, and again, the Eighth Circuit ruled adversely to movant on this issue.

### IV. CONCLUSION

For the foregoing reasons, Dotson's § 2255 motion is **DENIED**.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Dotson has not made a substantial showing of the denial of a federal constitutional right.

**SO ORDERED** this 1st day of November, 2013.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE