UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARRION DOTSON, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | Case no. 4:13CV01176 SNLJ |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM AND ORDER**

This case is before the Court on movant Marrion Dotson's supplemental Rule 59(e) motion, Doc. #16. On March 9, 2011, Movant Dotson pleaded guilty to kidnapping and possession of a firearm in furtherance of a crime of violence. On September 21, 2011, this Court sentenced Dotson to an aggregate term of 252 months' imprisonment. Dotson appealed his conviction and sentence to the Eighth Circuit Court of Appeals, but it was affirmed.

On June 19, 2013, Dotson filed a Motion to Vacate pursuant to 28 U.S.C. Title 2255 claiming he was told by his counsel that he was pleading guilty to only one count for which he would receive a seven-year sentence and that his counsel was ineffective for failing to object to a guideline enhancement or to raise a "reasonable certainty" claim on appeal. [Doc. 1] Following the government's response, this Court denied the motion to vacate on November 1, 2013. [Docs. 6 & 7] On November 25, 2013, Dotson filed his first "Motion to Rectify Manifest Injustice" pursuant to Rule 59(e). [Doc. 8] On December 2, 2013, this Court denied the first Motion to Rectify. [Doc 9] Also on December 2nd,

Dotson filed a Supplemental Motion to Rectify pursuant to Rule 59(e) suggesting that the anticipated ruling in *Rosemond v. United States* would be favorable to him. [Doc. 10] Before this Court ruled on the supplemental motion, Dotson filed a Notice of Appeal. [Doc. 11] The Eighth Circuit Court of Appeals has entered an order determining that the appeal lie dormant until this Court decides the supplemental Rule 59(e) Motion. [Doc. 15]

Dotson's supplemental motion to rectify merely informed the Court that the Supreme Court recently held oral arguments in *Rosemond v United States*, now 134 S. Ct. 1240 (2014) and predicted a change in the law. Dotson argued that there was a "landmark rule of law coming down in *Rosemond*," and that he should be allowed to argue the infirmity of his §924(c) conviction in light of what *Rosemond* would be holding whenever it would be handed down. Dotson was merely preserving an argument hoping for a favorable ruling.

Rule 59(e) motions serve the limited function of correcting "manifest errors of law or fact or to present newly discovered evidence" in civil cases. *United States v. Metro. Saint Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Innovative Home Health Care v. P.T.—O.T. Assoc. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir.1998).

Here, Dotson's Rule 59(e) claim is essentially a successive § 2255 motion and is thus an impermissible attempt to evade the certification process provided for in Section 2244.

"It is well established that inmates may not bypass the authorization requirement of 28 U.S.C. § 2244(b)(3) for filing a second or successive § 2254 or § 2255 action by purporting to invoke some other procedure." *United States v. Lambros*, 404 F.3d 1034, 1035 (8th Cir. 2005) (*citing United States v. Patton*, 309 F.3d 1093 (8th Cir.2002) (per curiam) (collecting cases); *see also Boyd v. United States*, 304 F.3d 813, 814 (8th Cir.2002) (per curiam) (if Rule 60(b) motion is actually successive habeas petition, court should dismiss it for failure to obtain authorization from court of appeals, or in its discretion, transfer motion to court of appeals)). Similarly, Dotson cannot circumvent the certification requirement under 28 U.S.C. § 2253(c)(1) through creative pleading. *Lamros*, 404 F.3d at 1035. A certificate of appealability or permission to seek successive habeas relief is required. *Id*. Movant wholly failed to follow procedure. When his motion to vacate was denied, the proper procedure was to request a certificate of appealability, not file a Rule 59(e) motion.

Dotson's Rule 59(e) motions were, in reality, efforts to file successive motions for post conviction relief. These motions should be denied because Movant did not have authorization from the Eighth Circuit. Further, the decision in *Rosemond* cannot justify a second or successive Section 2255 motion because it does not involve either "new evidence" or a new rule of "constitutional law." *See* 28 U.S.C. §§ 2255(h)(1)-(2);. Instead, *Rosemond* is a decision of *statutory* construction. *See In re Dorsainvil*, 119 F.3d 245, 247-48 (3rd Cir. 1997) (collecting cases holding that the new statutory interpretation announced in *Bailey v. United States*, 516 U.S. 137 (1995), "did not express a new rule of constitutional law" but merely interpreted a substantive criminal statute using rules of

3

statutory construction.) *Rosemond* does not represent a new rule of constitutional law that would justify authorization of seeking successive habeas relief. *See United States v. Foreman*, 2014 WL 4403445 (N.D. Okla. Sept. 5, 2014), *citing Martinez v. United States*, 2014 WL 3361748 at *2 (N.D.Tex. July 9, 2014). On this basis alone, the Court will deny Dotson's motion.

In an abundance of caution, however, this Court will also address the merits of Dotson's *Rosemond* claims. In *Rosemond v. United States*, 134 S. Ct. 1240 (2014), the Supreme Court clarified the requirements for proving that a defendant aided and abetted the use of a firearm during a crime of violence or drug trafficking crime in violation of 18 U.S.C. § 924(c).

The Supreme Court held that aiding and abetting requires both culpable intent and an affirmative act. *Rosemond*, 134 S. Ct. at 1245. With respect to the affirmative act requirement, the Court acknowledged that a defendant may be guilty of aiding and abetting an offense without proof that he participated in every component of the crime. Thus, a defendant need not have actively facilitated the use of the firearm to be guilty of aiding and abetting. *Id.* at 1246-47. Regarding the intent requirement, however, the Court held that the government must prove that the defendant "actively participate(d) in a criminal venture with full knowledge of the circumstances constituting the charged offense." *Id.* at 1241.

In the Section 924(c) context, this means that the defendant must "know[] that one of his confederates will carry a gun. *Id*.at 1249.

In such a case, the accomplice has decided to join in the criminal venture,

4

>and share in its benefits, with full awareness of its scope -that the plan calls not just for a drug sale, but for an armed one. In so doing, he has chosen ...to align himself with the illegal scheme in its entirety - including its use of a firearm....
>
>He thus becomes responsible, in the typical way of aiders and abettors, for the conduct of others. He may not have brought the gun to the drug deal himself, but because he took part in that deal knowing a confederate would do so, he intended the commission of a§ 924(c) offense-i.e., an armed drug sale.

*Id*. A defendant must therefore have advance knowledge that a gun will be used, meaning that he must learn of the gun at a time when he can still opt to walk away from the crime. *Id*.

Here, the facts contained in the stipulation and which were read in open court at the change of plea hearing included:

>Prior to November 21, 2010, on August 2, 2010, ATM Solutions (ATM) was located in the City of St. Louis and was in the business of collecting deposits for various banking institutions in the St. Louis area and additionally supplying funding to support transactions of those banks. The banks involved that serve as clients of ATM conduct business throughout the United States, and therefore their activity would be in and affecting interstate commerce. ATM also conducts business throughout the United States.
>
>On August 2, 2010, at approximately 6:05 a.m. four individuals, each, armed with a firearm, forced their way into ATM. They announced a robbery and subsequently took over $6 million which was the property of ATM. The money that was taken from ATM was taken under a threat of violence to two employees of ATM who were both physically restrained during the robbery. The robbers also took the firearms from each of the two employees and tied them up after forcing them to assist in placing of the US currency into an ATM van.
>
>The robbers decided that they needed to steal an ATM van, as there was too much money to put into the vehicle that they drove to the robbery. They loaded the ATM van with over $6 million and drove to a residence at 4032 Page, St. Louis, Missouri. The van was driven into the garage at that location and emptied. Those involved in the robbery were given some of the stolen money and their plan was that the money would be concealed for a time while things cooled down.

5

LARRY NEWMAN was one of the ATM robbers who, on the day of the robbery, received a share of the stolen money, being told that he would be given more at a later date. The day after the robbery, the original plan began to unravel when another one of the robbers, JOHN JONES, was arrested with over $1.4 million dollars in the trunk of his car following a police chase.

In November 2010, LARRY NEWMAN, reached out to MYRON KIMBLE and DOTSON and asked them to assist in his pursuit of more of a share of the stolen ATM money. Thinking that LATUNYA WRIGHT and JAMES WRIGHT could give NEWMAN the money he thought he deserved, a plan was developed to kidnap two young females as leverage against the WRIGHTS.

On November 21, 2010, NEWMAN, KIMBLE and DOTSON went to a residence in St. Louis County and using a firearm forced the two young females into their white Impala and drove off. The kidnapers used a cell phone belonging to one of the females and initially made contact with EDNA WRIGHT, the mother of the WRIGHTS and relayed their demand that if they did not receive more money the females would be killed. Contact was next made with JAMES WRIGHT and the same demand was made. Over the next thirty hours, the two females were driven to Illinois and back to Missouri a number of times. The victims were taken to a hotel in the City of St. Louis for a period of their captivity. At times during their ordeal, one or more of the kidnapers threatened them and used a firearm as a means to force their compliance. Many phone calls were made to JAMES WRIGHT to discuss the exchange of the demanded $50,000, later lowered to $15,000, for the two females. One female was eventually released.

Several hours later, after more negotiation, an agreement was reached to exchange the money for the second female at a parking lot in north St. Louis County. MYRON KIMBLE was to deliver the female in exchange for the money. KIMBLE was alarmed by a citizen who drove a vehicle near the exchange location and drove off in the Impala with the female still in the back seat. He was pursued by law enforcement and crashed his vehicle and escaped. The female was recovered. A firearm was found in the vehicle.

Guilty Plea agreement, p. 2-4; Plea Transcript, p. 9-16.

Dotson admitted to the above facts during his plea of guilty. Also from the facts set forth in the Presentence report, "[o]ver the next thirty hours . . . victims were

threatened by one or more of the kidnappers, and a firearm was used as a means to force their compliance." PSR, paragraph 24.

Dotson never walked away from this continuing crime of kidnapping by the force of firearms, he never opted out. Ignoring what Dotson admitted to at his plea, the basis of his amended position and his entire argument is that he did not know his co-defendants brought a firearm. But as the *Rosemond* court stated: "we think that (the presence of the firearm) means knowledge at a time the accomplice can do something with it—most notably, opt to walk away," but noting "[o]f course, if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge. In any criminal case, after all, the factfinder can draw inferences about a defendant's intent based on all the facts and circumstances of a crime's commission." *Rosemond*, 134 S. Ct. 1244-45, n.9. Here, Dotson decided to remain in the criminal enterprise and can find no relief in the application of the *Rosemond* case.

For the foregoing reasons, the Rule 59(e) motion is **DENIED**.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Dotson has not made a substantial showing of the denial of a federal constitutional right.

**SO ORDERED** this 10th day of October, 2014.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE